UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
UNITED STATES OF AMERICA,

    - against -

PAUL BLACKMOND,

                Defendant.
------------------------------------X

04 Cr. 424-06 (RWS)

SENTENCING OPINION

Sweet, D.J.,

On May 6, 2005, Defendant Paul Blackmond ("Blackmond") pled guilty to conspiracy in violation of 21 U.S.C. § 846 to distribute and possess with intent to distribute one kilogram and more of heroin, in violation of 21 U.S.C. §§ 812, 841(a)(1) and 841(b)(1)(A). Blackmond will be sentenced to 120 months' imprisonment and a five-year term of supervised release. A special assessment of $100 is mandatory and is due immediately.

**Prior Proceedings**

On May 6, 2004, the government filed a sealed indictment against Blackmond and his co-defendants, charging them with a single count of violating 21 U.S.C. § 846, conspiracy to distribute and possess with intent to distribute one kilogram and more of heroin. The indictment was unsealed on May 11, 2004, and an arrest warrant for Blackmond was issued and executed on the same day.

1

Blackmond has remained in custody since that time. On May 6, 2005, Blackmond appeared before the Honorable Debra C. Freeman of this District and allocuted to the criminal conduct charged in the indictment. Blackmond currently is scheduled for sentencing on June 13, 2006.

**The Sentencing Framework**

In accordance with the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), and the Second Circuit's decision in United States v. Crosby, 397 F.3d 103 (2d Cir. 2005), the sentence to be imposed was reached through consideration of all of the factors identified in 18 U.S.C. § 3553(a), including the advisory Sentencing Guidelines (the "Guidelines") established by the United States Sentencing Commission (the "Sentencing Commission"). Thus, the sentence to be imposed here is the result of a consideration of:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed --

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

>      (D)  to provide the defendant with needed
>           educational or vocational training, medical
>           care, or other correctional treatment in the
>           most effective manner;
>
> (3)  the kinds of sentences available;
>
> (4)  the kinds of sentence and the sentencing range
>      established for --
>
>      (A)  the applicable category of offense committed
>           by the applicable category of defendant as set
>           forth in the guidelines ...;
>
> (5)  any pertinent policy statement ... [issued by the
>      Sentencing Commission];
>
> (6)  the need to avoid unwarranted sentence disparities
>      among defendants with similar records who have been
>      found guilty of similar conduct; and
>
> (7)  the need to provide restitution to any victims of
>      the offense.

18 U.S.C. § 3553(a). A sentencing judge is permitted to find all the facts appropriate for determining a sentence, whether that sentence is a so-called Guidelines sentence or not. See Crosby, 397 F.3d at 114-15.

**The Defendant**

Blackmond was born on November 7, 1981, in the Bronx, New York. Blackmond's parents separated when he was about nine years old, after which time he lived with his mother, who remarried in the early 1990s. Blackmond reported having good relationships with both his stepfather and his father, who died in 2004. Blackmond has nine siblings and half-siblings. Blackmond has lived in New

3

York for most of his life, with the exception of a period between 2002 and 2003, when he resided in Raleigh, North Carolina.

Since 2003, he has been in a relationship with a woman who has one child from a previous relationship. Blackmond also has a daughter from another relationship. His daughter resides with her mother in the Bronx.

Blackmond dropped out of high school in 1998, and then participated in Job Corps for approximately three months. He earned his GED in 2001. Blackmond has worked at various times as a camp counselor, a variety store employee, and home care worker, and reports no assets.

Blackmond has a number of prior criminal convictions. On March 12, 2001, he was sentenced to a one-year term of imprisonment after pleading guilty to robbery in the second degree. On the same date, he also was sentenced to a one-year term of imprisonment and revocation of his driver's license after pleading guilty to attempted criminal sale of a controlled substance in the third degree. Although the sentences were imposed on the same day, the charges arose out of different incidents occurring at different times and places. On March 13, 2001, Blackmond was sentenced to thirty days' imprisonment for unauthorized use of a vehicle without the owner's consent. All of these sentences were to run concurrently.

On January 5, 2002, Blackmond was sentenced to two days' time served after pleading guilty to criminal possession of marijuana in the fifth degree.

On October 9, 2003, Blackmond pled guilty to criminal possession of a controlled substance in the seventh degree, and received a conditional discharge, unspecified alcohol treatment, and a six-month suspension of his driver's license. On April 30, 2004, Blackmond again pleaded guilty to criminal possession of a controlled substance in the seventh degree, and was sentenced to three days' time served and another six-month suspension of his driver's license. The conduct underlying both of the preceding convictions appears to have been part of the instant offense.

**The Offense Conduct**

The indictment filed in this action charges that from at least 1999 through May 2004, Blackmond, along with his nineteen co-defendants and others, was a member of a criminal organization in the Bronx that controlled a three-block strip of Daly Avenue between East 179th Street and Bronx Park South (the "Organization"). According to the indictment, the Organization sold heroin all day and late into the night during the period identified in the indictment, conducting tens of thousands of hand-

5

to-hand heroin transactions. The Organization operated out of several buildings, including 2105 Daly Avenue and 2114 Daly Avenue.

The government contends that Blackmond acted as a "manager" for the Organization, but the indictment does not specify whether he acted as a manager or as a "worker" or "pitcher." Managers in the Organization sold heroin directly to retail customers and provided heroin on consignment to workers, who then would sell the heroin to customers, paying the managers for the heroin as they were able to sell it. Workers and pitchers also acted as "steerers," directing customers on Daly Avenue to other workers or to managers to complete sales of heroin.

Based on trial testimony before the Court, the Organization sold an average of twenty-five bundles of heroin a day, which amounts to approximately half a kilogram per month, although the actual amount could vary from month to month.[1] With

---

[1] Although the government asserts that the Organization sold "as much as fifty bundles of heroin a day," which is the equivalent of 500 glassines of heroin a day, the Court finds an average daily distribution of twenty-five bundles. The trial testimony of one cooperating witness, who is a former member of the Organization, reveals that the sale of forty to fifty bundles was the "biggest number of bundles [the witness could] ever remember selling in one day." (Caesar Trial Tr. at 137) (emphasis added). That same witness a few moments later then said, in response to further questioning by the government, that "the most bundles is like probably eighty to a hundred." (Caesar Trial Tr. at 137.)

However, a different cooperating witness testified on direct examination that "on an average day" he would be able to sell "anywhere from a couple of bundles, like two bundles, three bundles, all the way up to thirty bundles." (Caesar Trial Tr. at

respect to Blackmond specifically, the Court finds that he should be held accountable for conspiring to distribute between three and ten kilograms of heroin during his involvement with the conspiracy between October 8, 2003 and May 11, 2004, when he was arrested.

**The Relevant Statutory Provisions**

The statutory minimum term of imprisonment for the sole count of the indictment is ten years and the maximum term is life, pursuant to 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. If a term of imprisonment is imposed, the Court shall impose a subsequent term of supervised release of at least five years pursuant to 21 U.S.C. § 841(b)(1)(A).

Blackmond is not eligible for probation because the instant offense is one for which probation has been expressly

---

387.) On a slow day he would sell "anywhere from five bundles or less," and on a "really busy day, anywhere like up to eighty bundles." (Caesar Trial Tr. at 388.) However, he then testified that this latter number was not based on his own experience -- but rather gleaned "from talk because you just like hear the guys either complaining about how little drug money they made or they could be <u>boasting</u> about how much drugs they sold that day." (Caesar Trial Tr. at 388) (emphasis added).

    The Organization operated in three shifts, with two people -- a manager and a pitcher -- working each shift. The pitcher conducted most of the sales, while the manager may have sold if the opportunity arose. (Caesar Trial Tr. at 135.) The Court considered both the structure of the Organization and the testimony presented regarding sales when determining the average daily distribution of heroin to attribute to the conspiracy.

7

precluded by statute. 18 U.S.C. § 3561(a)(2), 21 U.S.C. § 841(b)(1)(A).

The statutory maximum fine is $4 million, pursuant to 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846. A special assessment of $100 is mandatory. 18 U.S.C. § 3013.

Blackmond may be declared ineligible for any or all Federal benefits for up to five years as determined by the Court pursuant to 21 U.S.C. § 862(b)(1)(B). Federal benefit is defined to mean "'any grant, contract, loan, professional license, or commercial license provided by an agency of the United States or by appropriated funds of the United States' but 'does not include any retirement, welfare, Social Security, health, disability, veterans benefit, public housing, or other similar benefit, or any other benefit for which payments or services are required for eligibility.'" 21 U.S.C. § 862(d).

Pursuant to the Violent Crime Control and Law Enforcement Act of 1994, all offenders on probation, parole, or supervised release for offenses committed after September 13, 1994, are required to submit to one drug test within fifteen days of commencement of probation, parole, or supervised release and at least two drug tests thereafter for use of a controlled substance, unless ameliorated or suspended by the court due to its

determination that the defendant poses a low risk of future substance abuse as provided in 18 U.S.C. §§ 3563(a)(5) and 3583(d).

**The Guidelines**

The November 1, 2005 edition of the United States Sentencing Commission, <u>Guidelines Manual</u> ("U.S.S.G.") has been used in this case for calculation purposes, in accordance with U.S.S.G. § 1B1.11.

The guideline for a violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846 is found in U.S.S.G. § 2D1.1(a)(3), which specifies that the base offense level is set in accordance with the Drug Quantity Table under U.S.S.G. § 2D1.1(c). At his allocution, Blackmond indicated that he knowingly conspired with others to possess with intent to distribute heroin. It has been determined that the amount for which Blackmond should be held accountable is between three and ten kilograms of heroin. In light of this amount, and pursuant to the Drug Quantity Table, the base offense level is 34. U.S.S.G. § 2D1.1(c)(3).

As stated in the Guidelines,
> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either

9

a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1. As Blackmond was more than eighteen years of age at the time of the instant controlled substance offense and has one prior controlled substance convictions and one prior crime of violence conviction not arising out of the instant offense conduct, he is a career offender within the meaning of U.S.S.G. § 4B1.1(a).

Where the offense level for a career offender calculated pursuant to the table under U.S.S.G. § 4B1.1(b) is greater than the offense level otherwise applicable, the offense level from the table shall apply. In accordance with that table, the offense level determined under § 4B1.1(b) is 37.

Subsection (b) also provides that "[a] career offender's criminal history category in every case under this subsection shall be Category VI." U.S.S.G. § 4B1.1(b). Pursuant to § 4B1.1(b), Blackmond's Criminal History Category is elevated to VI.

Based on Blackmond's plea allocution, he has shown recognition of responsibility for the offense. Based on his timely notification of his intention to plead guilty and because the base offense level is greater than 16, the offense level is reduced by

three levels pursuant to U.S.S.G. §§ 3E1.1(a) and 3E1.1(b). The resulting adjusted offense level is 34.

Based on the offense level of 34 and a Criminal History Category of VI, the Guidelines range for imprisonment is 262 to 327 months.

The authorized term for supervised release under the guidelines is five years, pursuant to U.S.S.G. § 5D1.2(c).

Blackmond is not eligible for probation because the instant offense is a Class A felony, pursuant to U.S.S.G. § 5B1.1(b)(1), and because the applicable guideline range is in Zone D of the Sentencing Table, pursuant to U.S.S.G. § 5C1.1(f).

The fine range for the instant offense under the guidelines is from $17,500 to $4 million, pursuant to U.S.S.G. §§ 5E1.2(c)(3)(A) and 5E1.2(c)(4). Subject to Blackmond's ability to pay, the expected costs to the government of any imprisonment, probation, or supervised release shall be considered in imposing a fine, pursuant to U.S.S.G. § 5E1.2(d)(7). The most recent advisory from the Administrative Office of the United States Courts suggests a monthly cost of $1,933.80 to be used for imprisonment, a monthly cost of $287.73 for supervision, and a monthly cost of $1,675.23 for community confinement.

11

Pursuant to U.S.S.G. § 5F1.6, eligibility for certain federal benefits may be denied to any defendant convicted of distribution or possession of a controlled substance.

**The Remaining Factors of 18 U.S.C. § 3553(a)**

Having engaged in the Guideline analysis, this Court also gives due consideration to the remaining factors identified in 18 U.S.C. § 3553(a) in order to impose a sentence "sufficient, but not greater than necessary" as is required in accordance with the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), and the Second Circuit's decision in United States v. Crosby, 397 F.3d 103 (2d Cir. 2005). In particular, section section 3553(a)(2)(A) demands that the penalty "provide just punishment for the offense" that simultaneously "afford[s] adequate deterrence to criminal conduct" as required by section 3553(a)(2)(B). In addition, section 3553(a)(6) highlights "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

In formulating the Guidelines, the Sentencing Commission recognized the potential harm of overstating a defendant's criminal history and thus exposing the defendant to punishment far in excess of what may be necessary to deter recidivism: "If reliable

12

information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, a downward departure may be warranted." U.S.S.G. § 4A1.3(b)(1). A downward departure under this section may be appropriate "if, for example, the defendant had two minor misdemeanor convictions close to ten years prior to the instant offense and no other evidence of prior criminal behavior in the intervening period." U.S.S.G. § 4A1.3 cmt. n. 3; see also United States v. Carrasco, 313 F.3d 750, 757 (2d Cir. 2002) ("This type of departure [pursuant to § 4A1.3] is most frequently used when a series of minor offenses, often committed many years before the instant offense, results in a [Criminal History Category] that overstates the seriousness of the defendant's prior record.")

Factors to consider in granting a downward departure under § 4A1.3 may include "the amount of drugs involved in [the defendant's] prior offenses, his role in those offenses, the sentences previously imposed, and the amount of time previously served compared to the sentencing range called for by placement in [Criminal History Category] VI." United States v. Mishoe, 241 F.3d 214, 219 (2d Cir. 2001). As the Second Circuit noted in Mishoe,

> In some circumstances, a large disparity in that relationship [between the punishment prescribed by Criminal History Category VI and the degree of punishment

13

imposed for prior offenses] might indicate that the career offender sentence provides a deterrent effect so in excess of what is required in light of the prior sentences and especially the time served on those sentences as to constitute a mitigating circumstance present `to a degree' not adequately considered by the Commission.

241 F.3d at 220 (citing 18 U.S.C. § 3553(b).

Although a downward departure within the Guidelines is not appropriate in this case given the relative seriousness and recent nature of several of Blackmond's convictions, a sentencing court, under Booker, must consider the Guidelines as just one of several salient factors, see 18 U.S.C. § 3553(a)(5)(A), in determining whether to impose a Guideline sentence or a non-Guideline sentence and the length of such sentence. Here, the sentence resulting from Blackmond's designation as a career offender is "greater than necessary" to achieve the purposes of 18 U.S.C. § 3553(a)(2).

As previously noted, despite having several prior convictions (for both controlled substance offenses and a crime of violence) Blackmond has never spent more than approximately eight months in prison before the instant offense. He now faces a minimum mandatory term of imprisonment of ten years. The disparity

between the sentences imposed for his earlier convictions and the sentence dictated here by the career offender categorization is significant.

When considering the advisory Guideline range, the Court also considers what Blackmond's Guideline range would have been without his career offender designation. The Criminal History Category that would have applied were it not for the career offender designation is III,[2] and the adjusted offense level that would have applied but for Blackmond's career offender status is 31.[3] The resulting sentencing range would have been 135 to 168 months, a substantially lesser sentence than his current Guideline sentencing range of 262 to 327 months.

The goal of the career offender classification is to achieve a deterrent effect and to address adequately the concerns regarding recidivism that are reflected in that classification scheme. As the Second Circuit noted in Mishoe,

> Obviously, a major reason for imposing an especially long sentence upon those who have committed prior offenses is

---

[2] Were it not for the career offender designation, Blackmond's prior convictions would have resulted in a Criminal History of III, based on a total of six criminal history points calculated pursuant to U.S.S.G. §§ 4A1.1.

[3] The Court has concluded that Blackmond conspired to distribute between three and ten kilograms of heroin, thereby triggering a base offense level of 34. Given that he accepted responsibility in a timely manner, as detailed previously, his adjusted offense level is 31.

15

to achieve a deterrent effect that the prior punishments failed to achieve. That reason requires an appropriate relationship between the sentence for the current offense and the sentences, particularly the times served, for the prior offenses.

241 F.3d at 220. As Blackmond has previously spent only eight months in prison, any term of imprisonment significantly greater than this amount will achieve the deterrent effect underlying the career offender designation.

Balancing the need for meaningful deterrence with the statutory demand to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, 18 U.S.C. § 3553(a), it is determined that a non-Guidelines sentence is warranted. See United States v. Carvajal, 2005 WL 476125, at *5 (S.D.N.Y. Feb. 22, 2005) (stating, "But [the Career Offender Guidelines] are excessive, in light of the nature of [defendant's] recidivism, for the Guidelines for Career Offenders are the same regardless of the severity of the crimes, the dangers posed to victims' and bystanders' lives, and other appropriate criteria. A sentence that satisfies only the Guidelines would be "greater than necessary, to comply with the purposes" set forth in the statute."); United States v. Phelps, 2005 WL 984156, at *6 (E.D. Tenn. April 1, 2005) (noting, "[i]t is not unusual that the technical definitions of `crime of violence' and `controlled

16

substance offense' operate to subject some defendants to not just substantial, but extraordinary, increases in their advisory Guidelines ranges. In some of these cases, the Court believes a non-Guideline sentence may be sufficient, but not greater than necessary, to both comply with Congress's desire to punish recidivism and the purposes of sentencing set out in § 3553(a)(2).")

Blackmond faces a minimum mandatory term of incarceration of 120 months. This length of imprisonment is approximately fifteen times greater than that served by Blackmond on all of his prior convictions combined, an appropriate magnitude of difference. Cf. Mishoe, 241 F.3d at 220 (noting that a defendant who had twice served five- or six-year terms and thereafter committed another serious offense might be adequately deterred by a sentence of fifteen or twenty years).

Finally, in considering the remaining sentencing factors under 18 U.S.C. § 3553(a), the Court must take into account "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). Since Booker, a number of courts have "held that sentencing judges are `no longer prohibited from considering the disparity between co-defendants in fashioning a reasonable sentence.'" Ferrara v. United States, 372 F.Supp.2d 108 (D. Mass. 2005) (quoting United States v. Hensley, No. 2:04 CR

17

10081, 2005 WL 705241, at *2 (W.D. Va. Mar. 29, 2005)); see also United States v. McGee, 408 F.3d 966 (7th Cir. 2005); Simon v. U.S., 361 F.Supp.2d 35, 49 (E.D.N.Y. 2005).[4]

Blackmond's co-defendants Bernard Wheeler, Candido Serrano, and Alexis Hernandez all pled guilty to the sole count charged in the indictment, conspiracy to distribute and possess with intent to distribut one kilogram and more of heroin. All three were held responsible for amounts of heroin equal or greater than that for which Blackmond is held responsible. All three were designated career offenders under U.S.S.G. § 4B1.1, and one, Wheeler, had committed prior crimes of violence and received a firearm enhancement under the Guidelines. All three of these co-

---

[4] It should be noted that in an unpublished summary order that was entered after Booker and Crosby were announced, the Second Circuit reaffirmed the construction of section 3553(a)(6) announced in United States v. Joyner, 924 F.2d 454, 460 (2d Cir. 1991) (stating that "[t]o reduce the sentence by a departure because the judge believes that the applicable range punishes the defendant too severely compared to a co-defendant creates a new and entirely unwarranted disparity between the defendant's sentence and that of all similarly situated defendants throughout the country"). See United States v. Toohey, 2005 WL 1220361, at *2 (2d Cir. May 23, 2005). The Toohey court stated:

[Even after Booker,] Joyner's construction of the role the Guidelines play in [the] § 3553(a)(6) consideration remains the same. See United States v. Booker, 125 S.Ct. at 761, 767 (emphasizing the continued importance of the Guidelines to avoiding unwarranted sentencing disparities). Thus, a sentencing court does not reasonably satisfy its statutory obligation under § 3553(a)(6) when it only compares discrete cases or defendants. Rather, to identify a reasonable sentence, § 3553(a)(6) expects a court to consider whether a defendant is favored or disfavored by a particular sentence "compared to all those similarly situated defendants." United States v. Joyner, 924 F.2d at 461.

18

defendants were sentenced to terms of incarceration of 120 months followed by five years of supervised release.

The Court takes note of these sentences imposed on Blackmond's similarly situated co-defendants in an effort to be aware of the "just punishment" afforded other co-defendants and thereby "avoid unwarranted sentence disparities" in accordance with 18 U.S.C. § 3553(a)(6).

**The Sentence**

For the instant offense, Blackmond is sentenced to 120 months' imprisonment, followed by a five-year term of supervised release. As Blackmond has been detained without bail since his arrest, he is not a candidate for voluntary surrender pursuant to 18 U.S.C. § 3143(a)(2).

A special assessment fee of $100, payable to the United States, is mandatory and due immediately. Because Blackmond lacks financial resources, and in consideration of the other factors listed in 18 U.S.C. § 3572, no fine is imposed.

As mandatory conditions of supervised release, Blackmond shall (1) abide by the standard conditions of supervision (1-13); (2) not commit another federal, state, or local crime; (3) not illegally possess a controlled substance; (4) not possess a firearm

or destructive device; and (5) refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug testing within fifteen days of placement on probation or supervised release and at least two unscheduled drug tests thereafter, as directed by the probation officer.

Blackmond shall report to the nearest Probation Office within 72 hours of release from custody and shall be supervised by the district of residence.

This sentence is subject to modification at the sentencing hearing now set for June 13, 2006.

It is so ordered.

**New York, NY**
**June /3 , 2006**

_____
**ROBERT W. SWEET**
**U.S.D.J.**